IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PARTHA SARATHI KATARI,      )
                                   )
        Plaintiff,           )
                                   )
      v.                  )        2:25cv560
                                   )        **Electronic Filing**
WABTEC, INC.               )
                                   )
        Defendant.     )

## OPINION

Representing himself, Partha Sarathi Katari ("plaintiff") commenced this action against Wabtec Corporation ("defendant") alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act, the Americans with Disabilities Act ("ADA"), and the Pennsylvania Human Relations Act ("PHRA"). Presently before the Court is defendant's motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* For the reasons set forth below, defendant's motion to compel will be granted.

Whether a dispute must be submitted to arbitration "is a matter of contract between the parties" and "a judicial mandate to arbitrate must be predicated upon the parties' consent." Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 771 (3d Cir. 2013) (quoting Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980)). Enforcement of such contractual agreements is authorized by the FAA, provided the court is "satisfied that the making of the agreement for arbitration . . . is not in issue." Id. at § 4. To determine whether a party may be compelled to arbitrate under the FAA, courts must "first consider (1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." Flintkote Co. v. Aviva PLC, 769 F.3d 215, 220 (3d Cir. 2014).

"In the event that the making of the arbitration agreement is in issue, then 'the court shall proceed summarily to the trial 'of that issue.'" Guidotti, 716 F.3d at 771 (quoting Par-Knit Mills, 636 F.2d at 54 (quoting 9 U.S.C. § 4)).  "[T]he party who is contesting the making of the agreement has the right to have the issue presented to a jury." Id.

Review of a motion to compel arbitration can be undertaken pursuant to either Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure.  Guidotti, 716 F.3d at 776.  Which standard of review is applicable depends on the nature of the complaint and its supporting documents.  On the one hand, "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" Id. at 776 (quoting Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp.2d 474, 482 (E.D. Pa. 2011)).

On the other hand, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," then the parties are entitled to discovery on the issue of arbitrability and thereafter the issue is to be reevaluated under Rule 56 and/or summarily tried as appropriate.  Id.  Whether a district court can grant a limited period of discovery into arbitrability is "understood as being itself limited.  It should be read as encouraging factual discovery when such discovery is warranted." Young v. Experian Information Solutions, Inc., 119 F.4th 314, 319 (3d Cir. 2024).  But there must be something to discover.  Id.  If there is not a genuine dispute of material fact, the court should not delay a decision.  Id. at 320.

Here, the teachings of Young indicate this matter should be reviewed under a Rule 56 standard.  In response to defendant's motion to compel arbitration, plaintiff presents arguments

2

disputing the formation and existence of the arbitration agreement.  Defendant astutely notes, however, that in his initial complaint plaintiff neither disputes the existence of nor attaches any reference to an arbitration agreement.  Rather, plaintiff pled five counts of various discrimination violations under Title VII, the ADA, and the PHRA, and included supporting documentation.  Put plainly, plaintiff alleged arbitrable statutory violations rather than a challenge to the existence of the arbitration provision itself.

Only when defendant filed its motion to compel arbitration did plaintiff dispute the existence of the asserted arbitration agreement.  Having ventured beyond the four corners of his complaint, plaintiff must introduce evidence refuting the formation and/or the existence of an arbitration agreement.  As such, the motion will be reviewed under the Rule 56 standard.

Plaintiff challenges the formation and enforcement of the arbitration agreement on several grounds.  First, he adamantly avers that his responsibilities as a senior IT finance integrations architect and software engineer exempted him under Section 1 of the FAA.  In support, plaintiff presents case law exempting employees directly engaged in the flow of interstate commerce from arbitration agreements under Section 1 of the FAA.  Second, plaintiff maintains that he never signed an arbitration agreement.  From this it purportedly flows that there was neither a meeting of the minds nor mutual assent to form an agreement.  Third, plaintiff posits that the alleged arbitration agreement is procedurally and substantively unconscionable.  Procedurally, defendant supposedly exploited plaintiff's lack of knowledge on arbitration to deprive him of a meaningful choice.  Substantively, defendant hid additional terms and stipulations in the agreement.  Such bad faith and malice, plaintiff concludes, is outcome determinative of substantive unconscionability.  Finally, plaintiff insists the court cannot enforce the alleged arbitration agreement because doing so would violate public policy by tacitly condoning retaliatory destruction of evidence and financial coercion.

3

In response, defendant highlights several points that assertedly show a valid and enforceable arbitration agreement exists. First, plaintiff assertedly manifested assent to the agreement. In support, defendant proffers evidence from its internal electronic records indicating plaintiff received an ADR Acknowledgement and ADR Agreement on June 28, 2021. Defendant also submits its company policy to demonstrate plaintiff's assent. The policy specified that if a promoted employee had not previously signed an ADR Agreement, then the employee received the ADR documents upon promotion. Plaintiff's e-signature on June 28, 2021, coincided with his promotion. Should that be insufficient, defendant provides support for the proposition that plaintiff assented to the agreement by his continued employment with defendant. Finally, defendant observes that while plaintiff denies signing an arbitration agreement, plaintiff does not deny that he received, reviewed, and acknowledged the agreement as confirmed by defendant's electronic records.

Reviewing the record in the light most favorable to the nonmovant, there is no genuine factual dispute that plaintiff did not qualify as an exempt transportation worker under Section 1 of the FAA. The Supreme Court has limited the Section 1 exemption to "transportation workers" who "must at least play a direct and 'necessary role in the free flow of goods' across borders." Southwest Airlines Co. v. Saxon, 596 U.S. 450, 458 (2022) (quoting Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 115 (2001)).

It is apparent that plaintiff did not appreciate the import of the Supreme Court's holding. Plaintiff posits that he "worked in the transportation sector, directly supporting interstate commerce in rail and related operations in the corporate IT department," and "[c]ourts have consistently applie[d] the exemption to such workers." Plaintiff's Response in Opposition, Doc. No. 15, at 2. Yet, no controlling courts have applied the exemption to IT professionals that are several steps removed from the transport of goods.

4

It is undisputed that plaintiff held the role of senior IT finance integrations architect and software engineer. To that end, plaintiff managed financial technology systems. He ensured their proper configuration, integration, and optimization. Plaintiff never delivered or transported goods across state lines, and he never supervised any employees engaged in the transport of goods. What is more, defendant did not and does not engage in the interstate transport of goods. At that time, defendant provided equipment, digital solutions, and systems to a myriad of companies, some of which may have engaged in the transportation of goods.

Given this, the only parallels a fact finder may observe between plaintiff's cited cases and his former role are that plaintiff himself is a former employee and he claims an exemption under the FAA. But as the Court has held, a transportation worker must directly play a role in facilitating the transfer of goods across state borders. Southwest, 596 U.S at 458. Neither plaintiff nor defendant directly played a role in moving goods across state lines. Therefore, the record is clear that plaintiff is not an exempt transportation worker under the FAA.

Turning to the agreement, the record is clear the parties entered into a valid and enforceable arbitration agreement. Plaintiff has failed to proffer a modicum of evidence refuting the existence of an arbitration agreement. Instead, he adamantly insists that he never signed an ADR Agreement. He offers no proof or alternative theory for how defendant came to possess his authenticated e-signature.

He asserts his lack of acknowledgement demonstrates a lack of mutual assent to form an agreement and concludes that the lack of mutual assent demonstrates there was not a valid agreement. And his briefing lacks any case law or substantive legal reasoning to support this conclusion. Of course, "it is not the Court's job to 'research and construct legal arguments. . . In order to develop a legal argument effectively, the facts at issue must be bolstered by *relevant* legal authority; a perfunctory and undeveloped assertion is inadequate." Schneider's Dairy, Inc.

v. Service Personnel and Employees of Dairy Industry, 197 L.R.R.M. (BNA) 2890, n. 1 (W.D. Pa. 2013) (emphasis added) (citing 330 West Hubbard Rest. Corp. v. U.S., 203 F.3d 990, 997 (7th Cir. 2000). And "District Courts in this Circuit have held that a failure to advance anything more than a perfunctory argument constitutes a waiver of the argument," Wingard v. Penn State Police, No. 12-5000, 2013 WL 331109, at *7 (W.D. Pa. July 11, 2013)).

Moreover, the record clearly demonstrates that plaintiff received valid notice of the arbitration agreement and thereafter continued his employment with defendant. Continued employment is tantamount to valid assent to arbitrate. Several courts in this Circuit have recognized that continuing employment under such circumstances constitutes acceptance of the terms. See, e.g., Horowits v. AT&T Inc., 2019 WL 77331 at *7 (D.N.J. Jan. 2, 2019) ("Once a party receives notice, acceptance of the arbitration program may be signified by failing to opt out.") (citing Descafanco v. BJ's Wholesale Club, Inc., No. 15-7883, 2016 WL 1718677, at *2 (D.N.J. Apr. 28, 2016)).

Here, defendant submitted electronic records indicating plaintiff received an ADR Acknowledgement and an ADR Agreement upon his promotion on June 28, 2021. Doc. Nos. 10-2, 10-3. Plaintiff offered no evidence refuting the validity of those documents. Curiously, he directly cited defendant's ADR Acknowledgement in his brief. Doc. No. 15, at 2. The record is unequivocally clear; plaintiff received notice of the agreement and thereafter continued his employment until his termination on March 8, 2024.

Additionally, plaintiff neither addresses nor provides evidence countering defendant's submission of his electronic acknowledgement of the ADR Agreement. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of facts as required by Rule 56(c), the court may consider the fact undisputed for the purposes of the motion." As such, the record reflects defendant's submissions as fact. Plaintiff received notice

6

of the electronic agreement and signed the electronic agreement.  So there was an agreement to arbitrate between the parties.

Having established the existence of an arbitration agreement, plaintiff fails to proffer any evidence of procedural or substantive unconscionability in the formation of the agreement.  To prove an arbitration agreement is unconscionable under Pennsylvania law, a party must demonstrate that the agreement was both substantively and procedurally unconscionable. Styczynski v. MarketSource, Inc., 340 F.Supp.3d 534, 544 (E.D. Pa. 2018) (citing Salley v. Option One Mortg. Corp., 592 A.2d 115, 119-20 (Pa. 2007)).   The party challenging an arbitration agreement as substantively unconscionable bears the burden to produce evidence of unconscionability.  Zimmer v. CooperNeff Advisors, Inc., 523 F.3d 224, 230 (3d Cir. 2008) (citing Salley v. Option One Mortg. Corp., 592 A.2d 115, 119-20 (Pa. 2007)).

"Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language."  Styczynski, 340 F. Supp. at 544, (quoting Harris v. Green Tree Fin. Corp., 183 F.3d 173, 181 (3d Cir. 1999)).  In Pennsylvania, "[a] contract is procedurally unconscionable where 'there was a lack of meaningful choice in the acceptance of the challenged provision.'"  Id.  An inequality in bargaining power is not a sufficient reason to hold that an arbitration agreement is procedurally unenforceable in an employment context because parties frequently possess varying degrees of leverage in negotiation.  Id.  Further, simply classifying an agreement as a contract of adhesion does not render it unconscionable and unenforceable as a matter of law.  "A more searching inquiry of the parties' respective bargaining positions, level of sophistication, and opportunity to review an arbitration agreement are all relevant considerations in determining whether the process was unfair."  Bush v. Comcast Cable Communications Management, LLC,

2020 WL 4199077 at *7 (W.D. Pa. July 22, 2020) (citing <u>Seus v. John Nuveen & Co., Inc.</u>, 146 F.3d 175, 184 (3d Cir. 1998)).

Here, plaintiff fails to show procedural unconscionability.  Plaintiff insists defendant coerced his assent in a procedurally unconscionable manner because he "was never educated on arbitration and had no meaningful choice regarding assent."  Yet plaintiff fails to produce even a scintilla of evidence supporting his claim and the evidentiary record contradicts him.   What's more, defendant submitted a declaration from human resources manager Curtis Haines that details defendant's ADR agreement and acknowledgement practices.  <u>Doc.</u> No. 10-4, at 2-4.

Haines' declaration quickly dismantles plaintiff's depiction of himself as an employee unfamiliar with his right to negotiate.  As previously noted, plaintiff was presented with the agreement at the time of his promotion.  This is crucial for two reasons.  First, the record indisputably establishes plaintiff received and had an opportunity to read defendant's ADR Acknowledgment form.  And he explicitly recognizes that he received "[d]efendant's proffered ADR Acknowledgment."  <u>Plaintiff's</u> <u>Response</u> <u>in</u> <u>Opposition</u>, <u>Doc.</u> No. 15, at 2.  It logically follows that plaintiff therefore had adequate opportunity to apprise himself of his right to review the arbitration agreement and consult with defendant's human resources staff before consenting to the agreement.  Having had this opportunity, he cannot now contend he lacked an appropriate opportunity to assent or reject the form by declining the promotion.

Further, the record reflects that plaintiff is a sophisticated party.  As he admits, plaintiff was enrolled at the University of Pittsburgh in a master's in business administration program. Clearly, plaintiff possesses a higher level of education and a basic understanding of business operations.  And at the very least he had the competence to seek clarification in the event he needed further information.  The notion that defendant possessed a disproportionate level of knowledge when negotiating with plaintiff is nonsensical.

Second, the Haines declaration discredits plaintiff's insinuation that defendant acted surreptitiously in drafting an "inconsistent and unreliable" acknowledgement form. Plaintiff pointed to the differing "effective date" and "'signature date' of June 28, 2021" as evidence that an agreement does not exist. Response in Opposition at 2. But once again, defendant distributed its ADR agreement to promoted employees if the employee had not previously signed the agreement. Haines confirmed that defendant promoted plaintiff on June 28, 2021, and provided him with the ADR Agreement via the Acknowledgment form that same afternoon. Doc. No. 10-4 at 3.

Defendant hired plaintiff in September of 2014 and instituted its ADR policy in February of 2019. Defendant's internal records listed the agreement in effect for plaintiff as of February of 2020, but not signed until the day of plaintiff's promotion, June 28, 2021. Plaintiff maintains he had not seen the agreement until June of 2021. This may well be true and it soundly aligns with both plaintiff and defendant's timelines. In other words, the record shows clearly that plaintiff had ample opportunity to read, review, and question the arbitration agreement before consenting.

Plaintiff next attempts to show that the arbitration agreement is substantively unconscionable. He again fails to proffer sufficient evidence. "Substantive unconscionability refers to contractual terms that are unreasonable or grossly favorable to one side and to which the disfavored party does not assent." Grimm v. First Nat. Bank of Pennsylvania, 578 F.Supp.2d 785, 794-95 (W.D. Pa. 2008) (quoting Germantown Mfg. Co. v. Rawlinson, 491 A.2d 138, 145-47 (Pa.Super. 1985)).

Plaintiff maintains that the arbitration agreement is substantively unconscionable because " [d]efendant fabricated performance issues, inserted a hidden performance improvement plan into job documentation, extended the plan unfairly, and terminated [p]laintiff prematurely despite compliance." Doc. No. 15 at 3. But again, plaintiff does not point to any specific

9

language that unreasonably or grossly favors defendant.  Rather, he makes conclusory assertions that defendant exhibited "malice and bad faith" because it "extended the plan unfairly and terminated plaintiff prematurely despite compliance." Id.  He provides no further context into what that supposedly entailed.  Instead, he states "defendant has materially breached the mutual arbitration agreement," despite disavowing the existence of it.  Without supporting law, plaintiff argues this renders the agreement substantively unconscionable.

Plaintiff fundamentally misapprehends the purpose and process of arbitration.  "The purpose of arbitration is to serve as an alternative form of dispute resolution.  Both sides present evidence and a hearing may be held." Wayne v. Chopivsky, 657 F.Supp. 788, 792 (E.D. Pa. 1987).  Further, "[o]nce one party moves to compel, the non-moving party may respond with facts that reasonably 'place the agreement to arbitrate in issue.'" Kreider v. Green Robin Homes, LLC, 2025 WL 1582461 at *9, (E.D. Pa. June 4, 2025) (citing Guidotti, 716 F.3d at 776).

Plaintiff has conflated litigating his complaint with disputing the existence of an arbitration agreement.  He will have a chance to be heard on the issues and the merits of the case.  "The arbitration procedures under the ADR Agreement are akin to civil procedures in court." Doc. No. 11 at 2.  To that end, plaintiff's arguments about procedural unconscionability are available to be advance to and are better suited for the arbitrator.  His contentions that defendant "extended the plan unfairly and terminated plaintiff prematurely despite compliance" likewise may be advanced to the arbitrator.  But whatever else, these assertions fail to advance facts that place the existence of the arbitration agreement at issue.

Moreover, the record shows plaintiff's allegations are covered claims under the ADR Agreement.  The agreement states in part:

> Covered Claims include all claims arising out of related to the application for employment, employment relationship or the termination of that relationship. . . without limitation. . . retaliation, discrimination, or harassment and claims arising

10

under . . . Title VII of the Civil Rights Act of 1964. . . Americans with Disabilities Act. . . or similar subject matters, and all other federal, state or local statutory and legal claims . . . arising of out of relating to your application for employment, employment, or the termination of your employment.

Defendant's Brief in Support, Doc. No. 11 at 3.  Under this definition, the violations plaintiff alleges are subject to arbitration.

Finally, enforcement of the agreement neither violates public policy nor tacitly condones a retaliatory practice.  "The Federal Arbitration Act establishes a strong federal policy in favor of resolving disputes through arbitration."  Hopkins v. New Day Financial, 643 F. Supp.2d. 704, 713 (E.D. Pa. 2009) (citing Alexander v. Anthony Int'l L.P., 341 F.3d 256, 265 (3d Cir. 2003)).  Given the legislated presumption in favor of arbitration, plaintiff must produce compelling evidence to preclude enforcement of a valid agreement.  He makes unsupported allegations that defendant destroyed evidence in retaliation for plaintiff reporting discrimination and imposed financial coercion by withholding tuition reimbursement payments.  Doc. No. 15.  As is the reality with most of his brief, the allegations are bereft of legal or evidentiary support.  Such matters do not bear on the issue of arbitrability or the formation of an arbitration agreement.  As a result, the Court need not address them further.

For the reasons set forth above, defendant's motion to compel arbitration and stay the case will be granted.  Appropriate orders will follow.

Date: March 23, 2026

> s/David Stewart Cercone
> David Stewart Cercone
> Senior United States District Judge

cc:    James A. Holt, Esquire

      (*Via CM/ECF Electronic Mail*)

11

Partha Sarathi Katari
651 Chilliwack Lane
Mars, PA 16046

(*Sent Via First Class Mail*)